UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANITA MITCHELL
o/b/o Jason Mitchell (deceased),

                              Plaintiff,

v.                                                    1:13-CV-01479

                                                      (LEK/TWD)

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

ERWIN, McCANE & DALY                  THOMAS C. ERWIN, ESQ.
*Counsel for Plaintiff*
23 Elk Street
Albany, New York, 12207

HON. RICHARD S. HARTUNIAN             DANIEL R. JANES, ESQ.
United States Attorney for the        Special Assistant United States Attorney
  Northern District of New York
*Counsel for Defendant*
Room 218
James T. Foley U.S. Courthouse
Albany, New York 12207

OFFICE OF GENERAL COUNSEL             STEPHEN P. CONTE, ESQ.
Social Security Administration        Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

## REPORT AND RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the

Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C.

§ 636(b) and Northern District of New York Local Rule 72.3.  This case has proceeded in

accordance with General Order 18 of this Court which sets forth the procedures to be followed

when appealing a denial of Social Security benefits.  Both parties have filed briefs.  Oral

argument was not heard.  For the reasons discussed below, it is recommended that the

Commissioner's decision be affirmed.

## I.      BACKGROUND AND PROCEDURAL HISTORY

The claimant was born on March 15, 1974, and died during the course of the Social

Security proceedings of malignant melanoma on July 18, 2013.  (Administrative Transcript at

231, 246[1]; Dkt. No. 9 at 3[2].)  Claimant's widow has been substituted as the party Plaintiff.[3]  (Dkt.

No. 1-1.)  Plaintiff had a high school diploma, had attended some college classes, and had

completed a commercial driving training course.  (T. at 179, 251.)  He had a driver's license, and

had worked as a construction worker, highway maintenance laborer, truck driver, steel

fabrication, and painter.  (T. at 251, 299, 314, 335, and 341.)  Plaintiff alleged disability due to

left ankle, left knee, left leg, back, neck, and right shoulder conditions.  (T. at 231-32, 250.)

Plaintiff applied for disability insurance benefits on May 17, 2011, alleging disability as

of April 14, 2010.  (T. at 145, 246.)  The application was initially denied on August 31, 2011.

---

[1]      The Administrative Transcript is found at Dkt. No. 10.  Citations to the
Administrative Transcript will be referenced as "T" herein.

[2]      Citations to page numbers in the Plaintiff's Memorandum of Law refer to the page
number in the original document rather than the page numbers assigned by the Court's electronic
filing system.

[3]      Neither party objects to the substitution of the claimant's widow as the Plaintiff by
the use of Social Security Administration Form HA-539 in this case, and the Court declines to
address this issue.  The Court will refer to the deceased claimant as the "Plaintiff" herein.

(T. at 189.)  Plaintiff requested a hearing which was held on August 23, 2012, before

Administrative Law Judge ("ALJ") John J. Pickett, who denied the application in a decision

dated October 23, 2012.  (T. at 145-53, 159-181.)  On September 26, 2013, ALJ Pickett's

decision became the final decision of the Commissioner when the Appeals Council denied

Plaintiff's request for review.  (T. at 1-4.)  Plaintiff commenced this action on November 27,

2013.  (Dkt. No. 1.)

## II.      APPLICABLE LAW

### A.      Standard for Benefits

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI

disability benefits must establish that he or she is "unable to engage in any substantial gainful

activity by reason of any medically determinable physical or mental impairment which can be

expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2006).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but cannot,
> considering his age, education, and work experience, engage in any
> other kind of substantial gainful work which exists in the national
> economy, regardless of whether such work exists in the immediate
> area in which he lives, or whether a specific job vacancy exists for
> him, or whether he would be hired if he applied for work.

§ 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social

Security Administration ("S.S.A.") promulgated regulations establishing a five-step sequential

evaluation process to determine disability.  20 C.F.R. § 416.920(a)(4) (2015).  Under that five-

step sequential evaluation process, the decision-maker determines:

3

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014.)  "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further."  *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps.  *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of working.  *Id.* (quoting *Perry v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)).

**B.**     **Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citation omitted).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). "An ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010);[4] *see Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion . . . .'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be 'more than a mere scintilla' of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

---

[4]     On Lexis, this published opinion is separated into two documents. The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010). It includes only the district judge's short decision adopting the magistrate judge's report and recommendation. The second is titled *Roat v. Commissioner of Social Security*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55322 (N.D.N.Y. May 17, 2010). It includes only the magistrate judge's report and recommendation. Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Ross v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010). The Court has used the title listed by Westlaw.

### III.     THE ALJ'S DECISION

The ALJ first determined that Plaintiff did not engage in substantial gainful activity during the period from his alleged disability onset date of April 14, 2010, through the date of the ALJ's decision, December 23, 2012.  (T at 147.)  The ALJ found at step two of the sequential evaluation that Plaintiff had the "severe" impairments of cervical spine strain, a right shoulder impairment, a left knee impairment, a left ankle impairment, and obesity.  (T. at 147-48.)  At step three, the ALJ determined that Plaintiff's severe impairments did not meet or medically equal the criteria of an impairment contained in the Listing of Impairments.  (T. 148.)  The ALJ then concluded that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work as defined in the Commissioner's regulations at 20 C.F.R. § 404.1567(a), that is he could lift and/or carry up to ten pounds, sit for six hours and stand and/or walk for two hours each in an eight-hour workday.  (T. at 148-49.)  The ALJ further indicated that Plaintiff was precluded from climbing ladders, ropes, or scaffolds; and could occasionally reach overhead with his right upper extremity, stoop, crouch, crawl, kneel, squat, and climb stairs or ramps.  (T. at 148-49.)  At the fourth step, the ALJ concluded that Plaintiff could not perform any of his past relevant work.  (T. at 152.)  At the fifth step, ALJ Pickett applied the framework of the Medical-Vocational Rules (the "grids") to reach the determination that Plaintiff could make an adjustment to other work existing in significant numbers in the national economy.  The ALJ then concluded that Plaintiff was not disabled, and denied his claims for disability benefits.  (T. at 153.)

### IV.     THE PARTIES' CONTENTIONS

Plaintiff claims that the ALJ erred at step two of the analysis in failing to find that the Plaintiff's headaches and right ulnar neuropathy were not severe impairments.  (Dkt. No. 9 at 10-

11.)  Plaintiff also claims that the ALJ's determination of Plaintiff's RFC was erroneous because it did not include any exertional and nonexertional limitations related to Plaintiff's headaches and right ulnar neuropathy.  *Id*. at 11-12.  Lastly, Plaintiff asserts that ALJ Pickett erred in relying on the grids at step five of the sequential analysis.  *Id*. at 12-13.  Defendant contends that the ALJ's decision applied the correct legal standards and is supported by substantial evidence and thus should be affirmed.  (Dkt. No. 12.)

## V.     DISCUSSION

### A.     Step Two Analysis - Severity

Plaintiff argues that the ALJ erred in failing to find his headaches and right ulnar neuropathy were severe impairments.  Without any citation to the record, Plaintiff claims the conditions were "medically-determinable" and "well-diagnosed" and they "imposed more than minimal limitations on the claimant's ability to perform basic work activities."  (Dkt. No. 9 at 10.)  Again with no specific reference to the administrative record, Plaintiff also claims the medical evidence and his testimony show that his headaches caused dizziness, lightheadedness, and sensitivity to light "which would have prevented him from being able to maintain attention and concentration, would have affected his persistence and pace, and would have prevented him from working in environments with bright sunlight or bright interior lighting."  *Id.*  Plaintiff then asserts that his testimony about the difficulty he had in using his right hand for fine manipulation and keyboarding are limitations that "can reasonably be caused by [his] right ulnar neuropathy."  *Id*.

At the second step of the evaluation, the medical severity of a claimant's impairments is considered.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  A "severe impairment" is

defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* at §§ 404.1520(c), 404.1521, 416.920(c), 416.921. "Basic work activities" are defined as "the abilities and aptitudes necessary to do most jobs." *Id.* at §§ 404.1521(b), 416.921(b). These include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out, remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. *Id.*; *see also Ianni v. Barnhart*, Civ. No. 02-74A, 2005 WL 3220220, *11 (W.D.N.Y. Nov. 18, 2005) and *Camacho v. Apfel*, Civ. No. 97-6151, 1998 WL 813409, at *6 (E.D.N.Y. July 22, 1998). The claimant bears the burden of presenting evidence to establish severity. 20 C.F.R. § 404.1512(c) (2013). The claimant must demonstrate "that the impairment has caused functional limitations that precluded him from engaging in any substantial gainful activity for one year or more." *Perez v. Astrue*, 907 F. Supp.2d 266, 272 (N.D.N.Y. 2012) (citing *Rivera v. Harris*, 623 F.2d 212, 215 (2d Cir. 1980)).

A finding of not severe should be made if the medical evidence establishes only a slight abnormality which would have no more than a minimal effect on an individual's ability to work. *Id*. at 271; S.S.R. 85-28, 1985 WL 56858, at * 2 (1985). For the following reasons, I find that the ALJ's decision at step two is supported by substantial evidence and the Plaintiff has not met his burden regarding the alleged severity of his headaches and right ulnar neuropathy.

1.   Headaches

Initially, the ALJ noted that the record produced very little evidence of headaches. (T. at 147.) The record shows Plaintiff first complained of headaches at appointments in 1999 and

2000, nearly a decade prior to his alleged onset date. (T. at 534, 536, 538.) By February 5, 2010, Plaintiff claimed he had no symptoms of headaches. (T. at 458-59.) Then, at a November 16, 2011, appointment with internist Dr. Gabriel B. Alarcon, Plaintiff described experiencing headaches and dizziness. (T. at 582-87.) However, Plaintiff had an unremarkable physical examination at that time, and Dr. Alarcon ordered magnetic resonance imaging ("MRI") of Plaintiff's brain. (T. at 584.) Following up with Dr. Alarcon on December 16, 2011, Plaintiff's physical examination was again unremarkable. (T. at 580-81.) Dr. Alarcon noted that Plaintiff's brain MRI was normal, and diagnosed Plaintiff's headaches as stable with no signs of brain injury or tumor. (T. at 581.)

A review of the record shows that on his May 27, 2011, Disability Report, Plaintiff did not allege headaches as a medical condition limiting his ability to work. (T. at 250.) At the hearing held on August 27, 2011, he testified that he had headaches since 1997, but that he had not received treatment for the headaches other than the MRI study a year prior to the hearing. (T. at 173, 179.) The MRI results, as the claimant understood them and as shown on the MRI report, were normal. (T. at 174, 179, 581.) He took medication for the headaches back in 1997, but was not taking any medications for them at the time of the hearing. (T. at 174, 179-80.) He had trouble concentrating and he could not look at computers when he had headaches. (T. at 175.)

Plaintiff argues that the ALJ failed to account for his subjective symptoms of dizziness and lightheadedness due to the headaches, but Plaintiff does not note any objective medical evidence to support his claims. (*See* Dkt. No. 9 at 10-11.) Subjective symptomatology by itself cannot be the basis for a finding of disability; rather, Plaintiff must demonstrate by medical signs and laboratory findings the existence of an underlying condition reasonably expected to produce

the symptomatology alleged.  20 C.F.R. § 404.1529(b); S.S.R. 96-7p, 1996 WL 374186, at * 2

(S.S.A. July 2, 1996).  Here, Plaintiff has not demonstrated evidence of his alleged headaches by

medical signs and laboratory findings.  Thus, Plaintiff failed to carry his burden at step two in

providing evidence showing that his headaches were severe, and, moreover, the ALJ's finding

that his headaches were a nonsevere impairment is well-supported by the medical record.

2.    Ulnar Neuropathy

Regarding Plaintiff's alleged ulnar neuropathy in his right hand, the ALJ referred to

Plaintiff's March 20, 2009, treatment with internist Dr. Michael Schaeffer.  (T. at 148; T. at 453.)

At that appointment, Plaintiff showed diminished sensation despite having a negative Tinel's

sign, and Dr. Schaeffer advised using an elbow pad and over-the-counter medications.  (T. at

453.)  By November 22, 2010, orthopedic surgeon Dr. Ronald Horvath examined Plaintiff and

found that he exhibited no evidence of muscle weakness, or neurological or sensory deficits.  (T.

at 376.)  The ALJ also noted that at Plaintiff's July 20, 2011, consultative examination with

orthopedic specialist Dr. Jose Corvalan, Plaintiff had no sensory abnormalities; his reflexes were

"physiologic and equal, " and he had a full range of motion in his elbows, forearms, wrists, and

fingers.  (T. at 148; T. at 439).  Plaintiff's "hand and finger dexterity" were "intact" with full grip

strength bilaterally.  (T. at 439.)  Additionally, at the September 12, 2011, examination by Dr.

Horvath, Plaintiff again showed no strength or neurological deficits in his upper extremities.  (T.

at 470.)  In reviewing these unremarkable findings on May 15, 2012, State agency medical

consultant Dr. Shanker Gupta concluded that Plaintiff had no limitations with handling,

fingering, and feeling, or in gross or fine manipulation.  (T. at 500.)

Here, the objective evidence overwhelmingly supports the ALJ's conclusion that

10

Plaintiff's alleged ulnar neuropathy was a nonsevere impairment. (T at 147-48.) Plaintiff again cites only his testimony and makes no references to the objective medical record in arguing that the ulnar neuropathy was a severe impairment. (Dkt. No. 9 at 10-11.) However, as noted above, Plaintiff may not prove his impairment was severe without pointing to medical signs and objective medical test findings establishing the existence of an underlying condition reasonably expected to produce the symptomatology alleged. 20 C.F.R. § 404.1529(b); S.S.R. 96-7p, 1996 WL 374186, at *2.

The medical evidence in the record showed that Plaintiff's headaches and ulnar neuropathy did not limit his ability to do basic work activities. Rather, the headaches did not require extensive medical treatment and Plaintiff did not take medications to address the headaches. While Plaintiff reported pain and tingling in his wrist, "disability requires more than mere inability to work without pain. To be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983). Accordingly, the Court agrees with the Defendant that the ALJ correctly found that Plaintiff's alleged headaches and ulnar neuropathy of the right wrist were not "severe" impairments, as they did not significantly limit his physical or mental capacity to perform basic work functions.

### B.      The RFC Determination

Plaintiff next argues that the ALJ's RFC determination was flawed and incomplete. For the reasons stated below, the Court finds Plaintiff's argument without merit.

A claimant's RFC is the most the individual can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Ordinarily, RFC is the individual's maximum

remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule. *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion. 20 C.F.R. 404.1546(c). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id.* at § 404.1545(a). Age, education, past work experience, and transferability of skills are vocational factors to be considered. *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999). Physical abilities are determined by evaluation of exertional and nonexertional limitations. Exertional limitations include claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle. 20 C.F.R. §§ 404.1569a(a), 404.1569a(b), and 416.969a(a). Nonexertional limitations include mental impairments and difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*.

"The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations." *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding a plaintiff's capacities are not sufficient. *Roat,* 717 F. Supp. 2d at 267 (citation omitted). RFC is then used

to determine the particular types of work a claimant may be able to perform. *Whittaker*, 307 F.

Supp. 2d at 440.

Here, Plaintiff alleges that the ALJ's RFC determination was factually incomplete and incorrect. (Dkt. No. 9 at 11-12.) However, the ALJ thoroughly reviewed Plaintiff's history of injuries at work. (T. at 149-50.) First, on June 18, 1997, Plaintiff was injured in a work-related accident after he was struck on the head by construction equipment. (T. at 436-38, 555.) Plaintiff continued to work after the accident, until he fell out of the back of a truck at work on April 14, 2010, and injured his left leg. (T. at 349-50, 374-75.) The April 14, 2010, accident resulted in a fracture of the tibial plateau and of the tibia itself, derangement of the left knee, and contusion of the left ankle. (T. at 349-62, 437.) Plaintiff then underwent an open reduction and internal fixation of the tibial plateau on April 14, 2010, and on April 28, 2010, the wound from the surgery was irrigated and drained. (T. 351-54, 375.) Shortly thereafter, Plaintiff developed a compartment syndrome of the left leg and underwent an incision of the lateral aspect of the left leg to relieve compression of the nerves and vessels on June 18, 2010. (T. at 409-10, 437.)

Plaintiff then showed improvement after the surgeries. At a September 24, 2010, appointment with orthopedic surgeon Dr. Paul Hospodar, he examined Plaintiff and reviewed medical imaging of the left knee, and concluded that Plaintiff's left knee fracture was "pretty much healed at this point." (T. at 388, 411-12.) Dr. Hospodar also examined Plaintiff on January 31, 2011, and opined that while Plaintiff could not return to construction work, he noted that Plaintiff "may qualify for a more sedentary position if they can make accommodations for no prolonged standing, no prolonged walking, and no prolonged climbing or bending." (T. at 384.) Thereafter, in April and November 2011, Dr. Hospodar reiterated his finding that Plaintiff could

perform sedentary work with restrictions precluding heavy lifting and climbing. (T. at 380, 384, 474.) The ALJ agreed with Dr. Hospodar's assessments, and limited Plaintiff to sedentary work with further limitations consistent with the findings of Dr. Hospodar. (T. at 148.)

Dr. Ronald Horvath, an orthopedic surgeon, performed a Worker's Compensation assessment on November 22, 2010. (T. at 374-76.) On examination, Plaintiff appeared in no acute distress, had a full range of motion in his left shoulder and a limited range of motion in his right shoulder, showed no lumbar tenderness, and had negative straight leg raising. (T. at 375-76.) Additionally, Plaintiff had a full painless range of motion in his right knee, and a partially limited range of motion in his left knee but with only mild swelling. (T. at 376.) Dr. Horvath evaluated Plaintiff again on March 28, 2011, finding that Plaintiff was "deconditioned" and should undergo six weeks of physical therapy. (T. at 377.) Finally, at an examination on September 12, 2011, Dr. Horvath opined that Plaintiff could return to work with occasional lifting of twenty pounds. (T. at 469.)

The ALJ assigned significant weight to Dr. Horvath's findings, but still reduced Plaintiff's limitations in the RFC by limiting Plaintiff to sedentary work with lifting of only up to ten pounds, not the twenty pounds assessed by Dr. Horvath. (T. at 148, 469.) Thus, the ALJ's RFC was consistent with the medical evidence from Dr. Horvath. Although a determination regarding disability status by another governmental agency is not binding, it is entitled to some weight and should be considered. *See Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975). ALJ Pickett was entitled to consider Dr. Horvath's findings, and indeed was required to consider his opinions.

The ALJ also considered evidence from podiatrist Dr. Perrin Edwards. (T. at 151.) Dr.

Edwards provided Plaintiff with a leg brace at appointments in December of 2011, March of 2012, and May of 2012. (T. at 521-33.) The ALJ noted that Dr. Edwards assessed 25-percent temporary impairment on March 29, 2012, on the same State of New York, Worker's Compensation Board Doctor's Narrative Report form used by Dr. Hospodar. (T. at 151, 525-26.) As Dr. Edwards' assessment was actually less than the 100-percent temporary impairment found by Dr. Hospodar, who ultimately found Plaintiff capable of performing sedentary work (T. at 380, 384, 388), the ALJ found that Dr. Edwards' assessment was consistent with sedentary work. (T. at 152.)

The ALJ then addressed the opinions of the consultative examiner and the State agency medical consultant. Orthopedic specialist Dr. Jose Corvalan found Plaintiff appearing in no acute distress, getting on and off the examination table without assistance, and rising from his chair without difficulty. (T. at 438-40.) Dr. Corvalan did note a limited range of motion in Plaintiff's left knee and cervical spine, but found that Plaintiff exhibited negative straight leg raising bilaterally. (T. at 438-40.) Dr. Corvalan found moderate limitations in standing for long periods, walking long distances, bending, crouching, squatting, and lifting, pushing or pulling heavy weights. (T. at 440.) Taking these findings into account and assigning great weight to Dr. Corvalan's findings, the ALJ limited Plaintiff to sedentary work with further limitations including only occasional stooping, crouching, crawling, kneeling, squatting, or climbing of stairs. (T. at 148-52.) Finally, the ALJ assigned great weight to State Agency medical consultant Dr. Gupta's finding that Plaintiff could perform light work, but limited Plaintiff even further by restricting him to sedentary work. (T. at 148, 497-504.) The Second Circuit has acknowledged that the opinions of consultative and State agency doctors can constitute substantial evidence.

*See Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). Here, the ALJ considered the findings of Drs. Corvalan and Gupta, and provided even further limitations for Plaintiff than referenced in the opinions of those consultants. (T. at 148.)

Thus, there is substantial medical evidence in the record that supports the ALJ's determination that Plaintiff was able to undertake a variety of physical tasks, and it is clear that ALJ Pickett took into consideration Plaintiff's legitimate limitations by tailoring the RFC determination to allow for lifting of up to ten pounds, and only occasional stooping, crouching, crawling, kneeling, squatting, reaching overhead, or climbing of stairs. *Id.* Because the ALJ considered the findings and opinions submitted by all medical sources in reaching his conclusion, I find the determination of Plaintiff's RFC is supported by substantial evidence.

### C.    Credibility Evidence

Plaintiff's Memorandum of Law did not directly address the ALJ's credibility determination and therefore the Court concludes Plaintiff does not find any fault with it. However, it is well settled that part and parcel to the RFC determination is the ALJ's review of the credibility of Plaintiff, in addition to the ALJ's review of the medical opinion evidence. The Court reviews an ALJ's findings of fact under a substantial evidence standard. "It is the function of the Commissioner, not the reviewing courts, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984) (citation and internal punctuation omitted). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record. 20 C.F.R. § 404.1529; *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010); *see* SSR 96-7p, 1996 WL 374186, at *5 (S.S.A. July 2, 1996). The ALJ is

required to consider all of the evidence of record in making the credibility assessment. *Genier,* 606 F.3d at 50 (citing 20 C.F.R. §§ 404.1529, 404.1545(a)(3)).

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *2. This finding "does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms." *Id.* If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities. *Id.* An individual's statements about his pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish that the individual is disabled. *Id.* Here, the ALJ determined that Plaintiff's medically determined impairment could reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 20.)

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "'consider the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence.'" *Genier,* 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (finding that claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* S.S.R. 96-7p, 1996 WL 374186, at * 5 ("One strong indication of the credibility of an individual's statements is their consistency, both

internally and with other information in the case record.").  This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities.  S.S.R. 96-7p, 1996 WL 374186, at *2.

The ALJ must consider all evidence of record, including statements the claimant or others make about his or her impairments, restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings.  *Genier*, 606 F.3d at 49 (citing 20 C.F.R. § 404.1512(b)(3)).  A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone."  S.S.R. 96-7p, 1996 WL 374186, at *3.  However, when the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors:  (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  20 C.F.R. §§ 404.1529(c)(3)(I)-(vii); 416.929(c)(3)(I)-(vii).

Here, the ALJ found Plaintiff's allegations about a sitting limitation not credible because it was not supported by the medical evidence.  (T. at 162.)  The ALJ found Plaintiff's subjective

complaints concerning his ability to stand, walk, climb, and reach overhead partially credible. *Id.*

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, 96 Civ. 9435 (JSR)(SEG), 1999 WL 185253, at *5, 1999 U.S. Dist. LEXIS 4085, at *15-16 (S.D.N.Y. Mar. 25, 1999) (citations omitted)). "A finding that [a claimant] is not credible must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel Williams*, 859 F.2d at 260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's critical testimony "undermines the Secretary's argument that there is substantial evidence adequate to support his conclusion that claimant is not" disabled). "Further, whatever findings the ALJ makes must be consistent with the medical and other evidence." *Id*. at 261 (citation omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and diagnoses.").

Other than Plaintiff's assertion that the ALJ failed to consider his headaches and right ulnar neuropathy, as addressed above, Plaintiff argues that he could not sit for the periods required by sedentary work. (Dkt. No. 9 at 11.) In support of this allegation, Plaintiff again cites only to his own testimony regarding his alleged left lower extremity radicular symptoms. (*See id*.; T. at 166-70.) Again, the Court notes that subjective symptomatology alone cannot show disability; rather medical signs or other findings must show the existence of a medical condition that reasonably could be expected to produce the symptomatology alleged and that, considered with all the evidence, demonstrates that a claimant is disabled. 20 C.F.R. § 404.1529(b); S.S.R.

96-7p, 1996 WL 374186, at *2.

Here, the ALJ correctly found that Plaintiff's impairments could not reasonably be expected to produce his alleged symptoms, as these alleged symptoms were inconsistent with the findings of Drs. Hospodar, Horvath, Gupta, and Corvalan as discussed above. (T. at 148-52.) Instead, the overall totality of the objective medical evidence, particularly medical source statements of record, corroborated the ALJ's finding that Plaintiff's subjective complaints were not disabling to the extent alleged, and the ALJ did not err in failing to find that Plaintiff could not meet the sitting requirements of sedentary work.

Based upon the above, I find that the ALJ properly set forth his reasons for finding Plaintiff's claims regarding his sitting limitation, and his ability to stand, walk, climb, and reach overhead were inconsistent to the extent alleged with the objective medical evidence in regard to the intensity, persistence, and limiting effects of his symptoms. The ALJ reviewed all of the opinions and records of treating providers and consultative providers and gave good reasons for the determination he made on Plaintiff's credibility. As such, I find the RFC determination is based upon proper legal principles and supported by substantial evidence.

### D.     Step Five Determination

Plaintiff lastly challenges the ALJ's step five determination which was based upon an application of the grids. (Dkt. No. 9 at 12-13; T. at 152-53.) The Court finds no fault with the ALJ's determination at step five.

Generally, the Commissioner meets his burden at the fifth step by resorting to the applicable grids. *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)). The grids take into account the claimant's residual functional capacity

20

in conjunction with the claimant's age, education, and work experience. *Id.* "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy." *Id.*

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner at step five to prove that a job exists in the national economy which the claimant is capable of performing. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c). Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country. 20 C.F.R. §§ 404.1566(a), 416.966(a). In making this determination, the ALJ may apply the grids or consult a vocational expert. *See Rosa*, 168 F.3d at 78; 20 C.F.R. pt. 404, subpt. P, App. 2. If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled. *Pratts v. Chater*, 94 F.3d 34, 38-39 (2d Cir. 1996).

However, if a claimant suffers from nonexertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform. *Id.* at 39 (quoting *Bapp v. Bowen*, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also Zabala*, 595 F.3d at 410 (citing *Bapp*, 802 F.2d at 605). The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations. *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004 WL 1144059, at *6, 2004 U.S. Dist LEXIS 5125, at * 18 (N.D.N.Y. Mar. 22, 2004). A nonexertional limitation is one imposed by the

claimant's impairments that affect his ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain. *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)).  This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work.  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (citing *Zabala*, 595 F.3d at 411).  An impairment is not negligible when it so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.  *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).  Nonetheless, the existence of nonexertional limitations does not automatically preclude reliance on the Medical-Vocational Guidelines, or require that the ALJ consult a vocational expert.  *Zabala*, 595 F.3d at 411.  Where the claimant's nonexertional limitations do not result in an additional loss of work capacity, an ALJ's use of the Medical-Vocational Guidelines is permissible.  *Id.*

Plaintiff argues that the ALJ's reliance on the grids, specifically Rule 201.28, was in error because the Plaintiff has nonexertional limitations and therefore a vocational expert should have been consulted.  (Dkt. No. 9 at 12.)  The Court does not agree.  Plaintiff first reargues his challenge to the RFC, stating that because the RFC was not supported by substantial evidence, then any consideration of his RFC with the use of the grids at step five was improper.  *Id.*  As discussed above, the ALJ's RFC clearly addressed all of Plaintiff's limitations and the Court finds no fault with it.  Again, the Court notes that Plaintiff did not set forth any objective medical evidence showing that the ALJ's RFC failed to capture the totality of his limitations.  *See* Dkt. No. 9 at 9-13.

22

The Court agrees with the ALJ's finding that the Plaintiff's nonexertional limitations did not significantly limit his performance of the basic demands of sedentary work. As determined above, the ALJ's RFC finding was supported by substantial evidence and based upon correct legal principals. Plaintiff's nonexertional limitations set forth in the RFC were that he could do occasional stooping, crouching, crawling, kneeling, squatting, and reaching overhead with his right upper extremity. (T. at 148.) The ALJ noted that the impact on the broad world of work where a person has such postural and reaching limitations would not significantly erode the sedentary job base. S.S.R. 96-9p, 1996 WL 374185, at *6-8 (S.S.A. July 2, 1996). In citing the grid's Rule 201.28, the ALJ properly found, based upon substantial evidence of record, that Plaintiff's nonexertional limitations were not significant because he found the Plaintiff's limitations matched the parameters of the grids. (T. at 153.)

Therefore, substantial evidence supports ALJ Pickett's finding that Plaintiff's nonexertional impairments do not significantly reduce his occupational base, and the ALJ's reliance on the grids to provide the framework for determining that his nonexertional impairments were not disabling was correct. Under these circumstances, testimony of a vocational expert or other similar evidence regarding the existence of jobs Plaintiff can perform in the economy is unnecessary. The ALJ also correctly considered the Plaintiff's age, education, work experience, and RFC and concluded that jobs exist in significant numbers in the national economy that Plaintiff can perform. (T. at 152-53.) As such, the ALJ's decision was based upon correct legal standards and substantial evidence supports his determination that Plaintiff was not under a disability within the meaning of the Social Security Act. 20 C.F.R. § 416.920(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be affirmed and Defendant's motion for judgment on the pleadings be **GRANTED** and the complaint (Dkt. No. 1) be **DISMISSED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **<u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: March 9, 2015
      Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge